CLERK'S OFFICE U.S. DISTRICT COURT
AT ABINGDON, VA
FILED

JAN 23 2019

JULIA C. DUDLEY, CLERK
BY: /s/ _____
    DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ABINGDON

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Case No. 1:19CR3 |
| v. | ) |
| | ) Violations: 18 U.S.C. §§ 1028A, 1035, 1347, |
| MICHELE ANNETTE HONAKER | ) and 1349 |
| DANNY LEE HONAKER | ) |
| MARILYN YVETTE BLANKENSHIP | ) |
| and | ) |
| CHANDLER DALTON BLANKENSHIP | ) |

## INDICTMENT

### INTRODUCTION

The Grand Jury charges that:

1. At all times relevant to this indictment, Medicaid was a "healthcare benefit program" funded and administered by the United States government. A "healthcare benefit program" is defined in Title 18, United States Code, Section 24(b) as "any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item or service for which payment may be made under the plan or contract." Medicaid provided healthcare benefits to eligible recipients, including payment for a personal care aide for elderly and disabled beneficiaries.

2. The Medicaid program in the Commonwealth of Virginia was implemented by the Virginia Department of Medical Assistance Services ("DMAS").

3. As an alternative to placement in a nursing facility, DMAS offered services, including a personal care aide, to recipients who otherwise might be placed in a nursing facility, or who might need to be placed in a nursing facility in the near future. These benefits were first provided under the Elderly or Disabled with Consumer Direction (EDCD) Waiver and later provided under the Commonwealth Coordinated Care (CCC) Plus Waiver. Waiver services were required to be critical services that enabled the recipient to remain at home instead of being placed in a nursing facility.

4. Individuals who are approved under the EDCD or CCC Plus Waiver for a personal care aide were permitted to employ an aide of their own choosing pursuant to a consumer-directed model of care. In such cases, the recipient became the employer of the personal care aide, with the assistance of a Consumer Directed Service Facilitator (CDSF) of their choosing, and a Fiscal Agent called Public Partnerships, LLC. If an individual was unable to direct his or her own care, a family member or caregiver could serve as the employer on behalf of the individual as an employer of record ("EOR").

5. The EDCD and CCC Plus Waivers can also pay for respite care. Respite care services are additional personal care hours that are specifically designed to provide temporary, substitute care that is normally provided by the family or another unpaid primary caregiver of the recipient. Respite is for the relief of the caregiver due to the physical burden and emotional stress of providing continuous support and care to the recipient. These services are provided on a short-term basis because of emergency absence, or need for routine or periodic relief, of the primary caregiver.

*USAO# 2018R00098*  *Page 2 of 16*

Case 1:19-cr-00003-JPJ-PMS   Document 1   Filed 01/23/19   Page 2 of 16   Pageid#: 2

6. A CDSF is responsible for assisting the individual beneficiary, or EOR, with hiring an attendant and coordination of other consumer directed related services.

7. A part of his or her duties, a CDSF is responsible for doing home visits, training, and assessments with the recipient on a regular basis.

8. To be enrolled as a CDSF with Virginia Medicaid, a person must have sufficient resources to perform the required activities, and must have the ability to maintain and retain business and professional records sufficient to document fully and accurately the nature, scope, and details of the services provided.

9. When a Medicaid recipient first enrolls in Consumer Directed Services, a CDSF must make an initial comprehensive assessment home visit and collaborate with the recipient, the family and/or caregiver in coming up with a plan of care. A CDSF bills for this initial comprehensive visit using code H2000, and the visit must be documented on form DMAS-99.

10. After the initial comprehensive home visit, two routine onsite visits are recommended at the recipient's home within 60 days in order to monitor the plan of care. The first on-site visit should occur within 30 days, and the second should occur no later than 30 days after the first on-site visit.

11. The CDSF must monitor the plan of care after those first three visits on an as-needed basis, not to exceed a maximum of one on-site visit every 30 days, but no less than the minimum of one routine onsite visit every 90 days. A face-to-face home visit with the individual Medicaid recipient must be conducted at least every 90 days to ensure the appropriateness of any consumer directed services received. A CDSF bills for routine visits using code 99509. Every routine visit must be documented on form DMAS-99.

12. The CDSF must do a re-assessment visit with a recipient every six (6) months. A reassessment visit is more thorough than a routine visit, and the CDSF is reimbursed at a higher rate for this service. This visit must be documented on form DMAS-99, and a CDSF uses code T1028 to bill for a reassessment visit.

13. Within seven (7) days of the initial comprehensive visit, the CDSF must provide the beneficiary and/or the employer of record with training on the responsibilities of being an employer, using the "Employer of Record Manual." A CDSF bills for this training using code S5109, and the training must be documented on forms DMAS-99 and DMAS-488.

14. Upon the request of the beneficiary or the employer of record, the CDSF can provide "Management Training" to assist with understanding employer related activities. A CDSF can bill for this training using code S5116, and the training must be documented on form DMAS-99.

15. DMAS requires that all services by the CDSF to the beneficiary be documented, and any visit not documented in the beneficiary's records will be considered as not having been made.

16. A CDSF may only bill for a service if it actually occurs and if he or she has documentation to support the billing.

17. During all times relevant to this indictment, MICHELE ANNETTE HONAKER ("M. HONAKER") and MARILYN YVETTE BLANKENSHIP ("M. BLANKENSHIP") were Virginia Medicaid providers and CDSFs pursuant to the EDCD and CCC Plus waivers in the Commonwealth of Virginia.

18. From 4/12/2016 until 1/2/18, CHANDLER DALTON BLANKENSHIP ("C. BLANKENSHIP") was a Virginia Medicaid provider and a CDSF pursuant to the EDCD and CCC Plus waivers in the Commonwealth of Virginia.

19. M. HONAKER and M. BLANKENSHIP paid other individuals to assist them with their work as CDSFs. These other individuals conducted regular home visits and re-assessment visits of Medicaid recipients as directed by M. HONAKER and M. BLANKENSHIP. M. HONAKER and M. BLANKENSHIP billed Medicaid for work done by these other individuals.

20. At various times between 4/1/08 and 9/28/18, C. BLANKENSHIP worked for M. HONAKER and M. BLANKENSHIP, in addition to serving as a CDSF himself.

21. At various times between 4/1/08 and 9/28/18, DANNY LEE HONAKER ("D. HONAKER") worked for M. HONAKER.

22. M. HONAKER and M. BLANKENSHIP are sisters. C. BLANKENSHIP is M. BLANKENSHIP's son. D. HONAKER is M. HONAKER's husband.

23. On multiple occasions, M. HONAKER and M. BLANKENSHIP billed Virginia Medicaid for a routine visit and a re-assessment visit on the same date of service.

24. On multiple occasions, M. HONAKER, M. BLANKENSHIP and C. BLANKENSHIP billed for face-to-face home visits and/or reassessment visits with Medicaid recipients on or after the recipient's date of death.

25. On multiple occasions, M. HONAKER, M. BLANKENSHIP and C. BLANKENSHIP billed for visits that were not documented at all, or were not documented accurately or completely, as required by Virginia Medicaid.

26. On multiple occasions, M. HONAKER, and M. BLANKENSHIP billed for recipient training that never occurred.

27. On multiple occasions, M. HONAKER, M. BLANKENSHIP and C. BLANKENSHIP billed for face-to-face home visits or reassessment visits with Medicaid recipients

*USAO# 2018R00098* *Page 5 of 16*

Case 1:19-cr-00003-JPJ-PMS   Document 1   Filed 01/23/19   Page 5 of 16   Pageid#: 5

that never occurred.

28. M. HONAKER, D. HONAKER, M. BLANKENSHIP and C. BLANKENSHIP signed the names of, or copied the signatures of, Medicaid recipients on DMAS-99 forms without the Medicaid recipients' permission or knowledge, and used those forms as the basis for fraudulent billing of Virginia Medicaid.

29. M. HONAKER, D. HONAKER, M. BLANKENSHIP and C. BLANKENSHIP created false supporting paperwork for beneficiary files documenting face-to-face routine visits, re-assessments, and training that never occurred. M. HONAKER, M. BLANKENSHIP and C. BLANKENSHIP used this falsified paperwork as the basis for billing Virginia Medicaid.

30. From 4/1/08 until 9/28/18, M. HONAKER fraudulently billed Medicaid $ 320,071.08 for CDSF work, and was paid $ 306,467.36.

31. From 4/1/08 until 9/27/18, M. BLANKENSHIP fraudulently billed Medicaid $140,002.90 for CDSF work, and was paid $132,250.21.

32. From 4/22/16 until 1/02/2018, C. BLANKENSHIP fraudulently billed Medicaid $3,564.40 for CDSF work, and was paid $3,118.85.

## COUNT ONE

The Grand Jury charges that:

1. The Introduction is re-alleged and incorporated by reference into this count of the indictment.

2. On or about and between 4/1/08 and 9/28/2018, in the Western District of Virginia and elsewhere, MICHELE ANNETTE HONAKER, DANNY LEE HONAKER, MARILYN YVETTE BLANKENSHIP and CHANDLER DALTON BLANKENSHIP conspired to knowingly

and willfully execute and attempt to execute a scheme and artifice to (a) defraud any healthcare benefit program and (b) obtain by means of false and fraudulent pretenses, representations, and promises, money under the custody and control of Virginia Medicaid, a healthcare benefit program as defined by Title 18, United States Code Section 24(b), in connection with the delivery of and payment for healthcare benefits, items and services, in violation of Title 18, United States Code Section 1347.

3. It was an object of the conspiracy that MICHELE ANNETTE HONAKER, DANNY LEE HONAKER, MARILYN YVETTE BLANKENSHIP and CHANDLER DALTON BLANKENSHIP would gain compensation from Virginia Medicaid to which they were not entitled by fraudulently billing for services as a Consumer Directed Service Facilitator (CDSF) pursuant to the Elderly and Disabled Consumer Directed Waiver program and the Commonwealth Coordinated Care Plus Waiver program.

4. All in violation of Title 18, United States Code, Section 1349.

## COUNT TWO

The Grand Jury charges that:

1. The Introduction is re-alleged and incorporated by reference into this count of the indictment.

2. On or about and between 4/1/08 and 9/28/18, in the Western District of Virginia and elsewhere, MICHELE ANNETTE HONAKER, DANNY LEE HONAKER, MARILYN YVETTE BLANKENSHIP and CHANDLER DALTON BLANKENSHIP, as principals and aiders and abettors, knowingly and willfully executed and attempted to execute a scheme and artifice to (a) defraud any healthcare benefit program and (b) obtain by means of false and fraudulent pretenses, representations, and promises, money under the custody and control of Virginia Medicaid, a

healthcare benefit program as defined by Title 18, United States Code Section 24(b), in connection with the delivery of and payment for healthcare benefits, items and services.

3. An object of the scheme and artifice to defraud was that MICHELE ANNETTE HONAKER, DANNY LEE HONAKER, MARILYN YVETTE BLANKENSHIP and CHANDLER DALTON BLANKENSHIP would gain compensation from Virginia Medicaid to which they were not entitled by fraudulently billing for services as a Consumer Directed Service Facilitator (CDSF) pursuant to the Elderly and Disabled Consumer Directed Waiver program and the Commonwealth Coordinated Care Plus Waiver program, by:

(a) billing for routine visits and reassessment visits on the same date of service;

(b) billing for services on or after the date of a beneficiary's death;

(c) billing for excessive training and for training that never occurred;

(d) billing for routine and reassessment visits that never occurred; and

(e) billing for services not supported by required documentation.

4. All in violation of Title 18, United States Code, Sections 2 and 1347.

## COUNTS THREE THROUGH NINE

The Grand Jury charges that:

1. The Introduction is re-alleged and incorporated by reference into these counts of the indictment.

2. On or about the following dates, in the Western District of Virginia and elsewhere, MICHELE ANNETTE HONAKER, as a principal and aider and abettor, in a matter involving a healthcare benefit program, knowingly and willfully: (1) falsified, concealed, and covered up by trick, scheme, and device, a material fact; (2) made materially false, fictitious, and fraudulent statements and representations; and (3) made and used materially false writings and documents

knowing the same to contain materially false, fictitious and fraudulent statement and entries in connection with the delivery of or payment for healthcare benefits, items, or services.

3. On or about the following dates, MICHELE ANNETTE HONAKER used and submitted fraudulent billing to Virginia's Department of Medical Assistance Services (DMAS) for the purpose of receiving reimbursement from Virginia Medicaid, for consumer directed facilitation services provided to certain Medicaid recipients, by billing DMAS for reassessment visits when no visit occurred:

| COUNT | ALLEGED SERVICE DATE | BILLING DATE | RECIPIENT |
|---|---|---|---|
| THREE | 6/25/14 | 7/14/14 | JH |
| FOUR | 3/22/16 | 3/25/16 | GB |
| FIVE | 8/19/16 | 9/16/16 | JC |
| SIX | 7/7/14 | 7/14/14 | MC |
| SEVEN | 8/17/16 | 8/25/16 | GS |
| EIGHT | 1/16/14 | 1/31/14 | CS |
| NINE | 1/7/17 | 5/3/17 | VC |

4. Whether or not the reassessment visit actually occurred in each case is material to the determination of whether or not reimbursement would be paid by Virginia Medicaid.

5. At the time MICHELE ANNETTE HONAKER made and caused the making of these statements and representations and used and caused the using of these writings and documents, she knew them to be false.

6. All in violation of Title 18, United States Code, Sections 2 and 1035.

## COUNTS TEN THROUGH FOURTEEN

The Grand Jury charges that:

1. The Introduction is re-alleged and incorporated by reference into these counts of the indictment.

2. On or about the following dates, in the Western District of Virginia and elsewhere, MARILYN YVETTE BLANKENSHIP, as principal and aider and abettor, in a matter involving a healthcare benefit program, knowingly and willfully: (1) falsified, concealed, and covered up by trick, scheme, and device, a material fact; (2) made materially false, fictitious, and fraudulent statements and representations; and (3) made and used materially false writing and documents knowing the same to contain materially false, fictitious and fraudulent statement and entries in connection with the delivery of or payment for healthcare benefits, items, or services.

3. On or about the following dates, MARILYN YVETTE BLANKENSHIP used and submitted fraudulent billing to Virginia's Department of Medical Assistance Services (DMAS) for the purpose of receiving reimbursement from Virginia Medicaid, for consumer directed facilitation services provided to certain Medicaid recipients by billing DMAS for reassessment visits when no visit occurred:

| COUNT | ALLEGED SERVICE DATE | BILLING DATE | RECIPIENT |
|---|---|---|---|
| TEN | 8/12/17 | 9/22/17 | GB |
| ELEVEN | 8/17/16 | 8/19/16 | AF |
| TWELVE | 4/28/16 | 4/29/16 | JH |
| THIRTEEN | 10/24/14 | 10/30/14 | EH |
| FOURTEEN | 2/26/14 | 2/28/14 | BS |

4. Whether or not the face-to-face routine visit or reassessment visit actually occurred in each case is material to the determination of whether or not reimbursement would be paid by Medicaid.

5. At the time MARILYN YVETTE BLANKENSHIP made and caused the making of these statements and representations and used and caused the using of these writings and documents, she knew them to be false.

6. All in violation of Title 18, United States Code, Sections 2 and 1035.

## COUNTS FIFTEEN THROUGH TWENTY

The Grand Jury charges that:

1. The Introduction is re-alleged and incorporated by reference into these counts of the indictment.

2. On or about the following dates, in the Western District of Virginia and elsewhere, CHANDLER BLANKENSHIP, as principal and aider and abettor, in a matter involving a healthcare benefit program, knowingly and willfully: (1) falsified, concealed, and covered up by trick, scheme, and device, a material fact; (2) made materially false, fictitious, and fraudulent statements and representations; and (3) made and used materially false writing and documents knowing the same to contain materially false, fictitious and fraudulent statement and entries in connection with the delivery of or payment for healthcare benefits, items, or services.

3. On or about the following dates, CHANDLER BLANKENSHIP used and submitted fraudulent billing to Virginia's Department of Medical Assistance Services (DMAS) for the purpose of receiving reimbursement from Virginia Medicaid, for consumer directed facilitation services provided to certain Medicaid recipients, by billing DMAS for reassessment visits when no visit occurred.

| COUNT | ALLEGED SERVICE DATE | BILLING DATE | RECIPIENT |
|---|---|---|---|
| FIFTEEN | 10/9/17 | 10/13/17 | BB |
| SIXTEEN | 1/6/17 | 1/6/17 | DB |
| SEVENTEEN | 10/9/17 | 10/13/17 | KB |
| EIGHTEEN | 5/29/17 | 6/2/17 | EJM |
| NINETEEN | 5/29/17 | 6/2/17 | EMM |
| TWENTY | 7/15/16 | 7/15/16 | TB |

4. Whether or not the face-to-face routine visit or reassessment visit actually occurred in each case is material to the determination of whether or not reimbursement would be paid by Medicaid.

5. At the time CHANDLER BLANKENSHIP made and caused the making of these statements and representations and used and caused the using of these writings and documents, he knew them to be false.

6. All in violation of Title 18, United States Code, Sections 2 and 1035.

### COUNTS TWENTY-ONE THROUGH TWENTY-SEVEN

The Grand Jury charges that:

1. The Introduction and factual allegations set forth in Counts One through Twenty are re-alleged and incorporated by reference into these counts of the indictment.

2. To receive reimbursement for face to face assessments, MICHELE ANNETTE HONAKER caused the submission of claim forms to Virginia Medicaid. Virginia Medicaid processed and paid the claims submitted by MICHELE ANNETTE HONAKER.

3. MICHELE ANNETTE HONAKER used each Medicaid recipient's name, date of birth, and insurance identification number in order to identify the recipient for which service was provided and to receive payment for a claim.

4. On or about the dates listed below, in the Western District of Virginia and elsewhere, MICHELE ANNETTE HONAKER knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, including the name, signature, date of birth, and insurance identification number of each Virginia Medicaid recipient identified with initials below, during and in relation to a violation of 18 U.S.C. § 1035 by making false statements relating to healthcare matters.

5. MICHELE ANNETTE HONAKER used the name, signature, date of birth, and insurance identification number of each beneficiary listed below to seek reimbursement for a face to face routine home visit or reassessment visit when no visit occurred, and without lawful authority to do so:

| COUNT | ALLEGED SERVICE DATE | BILLING DATE | RECIPIENT |
|---|---|---|---|
| TWENTY-ONE | 6/25/14 | 7/14/14 | JH |
| TWENTY-TWO | 3/22/16 | 3/25/16 | GB |
| TWENTY-THREE | 8/19/16 | 9/16/16 | JC |
| TWENTY-FOUR | 7/7/14 | 7/14/14 | MC |
| TWENTY-FIVE | 8/17/16 | 8/25/16 | GS |
| TWENTY-SIX | 1/16/14 | 1/31/14 | CS |
| TWENTY-SEVEN | 1/7/17 | 5/3/17 | VC |

6. All in violation of Title 18, United States Code, Sections 2 and 1028A.

**COUNTS TWENTY-EIGHT THROUGH THIRTY-TWO**

The Grand Jury charges that:

1. The Introduction and factual allegations set forth in Counts One through Twenty are re-alleged and incorporated by reference into these counts of the indictment.

2. To receive reimbursement for face-to face assessments, MARILYN YVETTE BLANKENSHIP caused the submission of claim forms to Virginia Medicaid. Virginia Medicaid processed and paid the claims submitted by MARILYN YVETTE BLANKENSHIP.

3. MARILYN YVETTE BLANKENSHIP used each Medicaid recipient's name, date of birth, and insurance identification number in order to identify the recipient for which service is provided and to receive payment for a claim.

4. On or about the dates listed below, in the Western District of Virginia and elsewhere, MARILYN YVETTE BLANKENSHIP knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, including the name, signature, date of birth, and insurance identification number of each Virginia Medicaid recipient identified with initials below, during and in relation to a violation of 18 U.S.C. § 1035, by making false statements relating to healthcare matters.

5. MARILYN YVETTE BLANKENSHIP used the name, signature, date of birth, and insurance identification number of each beneficiary listed below to seek reimbursement for a face to face routine home visit or reassessment visit when no visit occurred, and without lawful authority to do so:

| COUNT | ALLEGED SERVICE DATE | BILLING DATE | RECIPIENT |
|---|---|---|---|
| TWENTY-EIGHT | 8/12/17 | 9/22/17 | GB |
| TWENTY-NINE | 8/17/16 | 8/19/16 | AF |
| THIRTY | 4/28/16 | 4/29/16 | JH |
| THIRTY-ONE | 10/24/14 | 10/30/14 | EH |
| THIRTY-TWO | 02/26/14 | 2/28/14 | BS |

6. All in violation of Title 18, United States Code, Sections 2 and 1028A.

## COUNTS THIRTY-THREE THROUGH THIRTY-EIGHT

The Grand Jury charges that:

1. The Introduction and factual allegations set forth in Counts One through Twenty are re-alleged and incorporated by reference into these counts of the indictment.

2. To receive reimbursement for face to face assessments, CHANDLER BLANKENSHIP caused the submission of claim forms to Virginia Medicaid. Virginia Medicaid processed and paid the claims submitted by CHANDLER BLANKENSHIP.

3. CHANDLER BLANKENSHIP used each Medicaid recipient's name, date of birth, and insurance identification number in order to identify the recipient for which service is provided and to receive payment for a claim.

4. On or about the dates listed below, in the Western District of Virginia and elsewhere, CHANDLER BLANKENSHIP knowingly transferred, possessed, and used, without lawful authority, a means of identification of another person, including the name, signature, date of birth, and insurance identification number of each Virginia Medicaid recipient identified with initials below, during and in relation to a violation of 18 U.S.C. § 1035, by making false statements relating to healthcare matters.

5. CHANDLER BLANKENSHIP used the name, signature, date of birth, and insurance identification number of each beneficiary listed below to seek reimbursement for a face to face routine home visit or reassessment visit when no visit occurred, and without lawful authority to do so:

| COUNT | ALLEGED SERVICE DATE | BILLING DATE | RECIPIENT |
| --- | --- | --- | --- |
| THIRTY-THREE | 10/9/17 | 10/13/17 | BB |

| | | | |
|---|---|---|---|
| THIRTY-FOUR | 1/6/17 | 1/6/17 | DB |
| THIRTY-FIVE | 10/9/17 | 10/13/17 | KB |
| THIRTY-SIX | 5/29/17 | 6/2/17 | EJM |
| THIRTY-SEVEN | 5/29/17 | 6/2/17 | EMM |
| THIRTY-EIGHT | 7/15/16 | 7/15/16 | TB |

6. All in violation of Title 18, United States Code, Sections 2 and 1028A.

A TRUE BILL, this 23 day of January, 2019.

s/ Grand Jury Foreperson

*Daniel P. Bubar/AUSC*
DANIEL P. BUBAR
First Assistant United States Attorney
Attorney for the United States, Acting Under Authority Conferred by 28 USC § 515